| | | |
|---|---|---|
| BRENDA PARKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:17-cv-04404-JMS-MJD |
| | ) | |
| AMAZON.COM.INDC LLC, JOHN NGUYEN, | ) | |
| BRENT YODER, OPS MANAGER, and DAVID | ) | |
| ALPERSON, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff, who is proceeding *pro se*, is a former employee of Defendant Amazon.com.indc LLC ("Amazon") and initiated this lawsuit on November 28, 2017. She alleges, among other things, that Amazon and Defendants John Nguyen, Brent Yoder, and David Alperson discriminated against her based on her national origin and religion, retaliated against her, and violated various laws by interfering with her use of the internet, tracking her cell phone, and filming her in the women's restroom. Defendants Amazon, Mr. Yoder, and Mr. Alperson have moved to dismiss all of the claims against them, and their motion is now ripe for the Court's decision. [Filing No. 51.]

## I.
### STANDARD OF REVIEW

Under Rule 12(b)(6), a party may move to dismiss a claim that does not state a right to relief. The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all

permissible inferences in favor of the plaintiff. *See Active Disposal Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## II.
### BACKGROUND

The following are the factual allegations in the Complaint, which the Court must accept as true at this time:

Ms. Parker was employed by Amazon at its Whitestown, Indiana facility as a packer in the Large Packing Department, and would also pack in the Small Packing Department on occasion. [Filing No. 1 at 4.] Amazon had a daily packing quota that every employee had to meet, which required "a daily rate of 85 and daily pack 850 units per 10 hour shift." [Filing No. 1 at 5.] Ms. Parker exceeded the packing quotas from 2015 to 2017. [Filing No. 1 at 5.] When Amazon asked Ms. Parker if she would switch from the Large Packing Department to the Small Packing Department, she agreed, but after switching she "realized that her hourly and daily rate were being manipulated to reflect a slower packing rate of units than what [she] was packing." [Filing No. 1 at 5-6.] Ms. Parker received positive feedback from the end of 2014 through January 2017. [Filing No. 1 at 6.]

In late 2016 to early 2017, Amazon recruited a male associate to harass Ms. Parker, and he made sexually explicit statements to her that he "has seen all of [her], in all her glory and he started laughing [and] stated 'you aren't no Christian in what I saw.'" [Filing No. 1 at 15-16.] The associate then was transferred to the night shift or another location and Ms. Parker has not seen him since. [Filing No. 1 at 16.] Ms. Parker believes that Amazon has used a heat seeking device called a "flir" to stalk and spy on her while she is in her own apartment and in the privacy of her own bathroom since 2016. [Filing No. 1 at 16.] She also believes that since 2016 Amazon has used audio recorders near the lockers at the Whitestown facility to record employees' conversations, and alleges that Amazon "has willfully violated [her privacy] by listening in on conversations [she] had on her phone and deliberately interrupting phone calls that [she] attempted to make while on lunch or break." [Filing No. 1 at 17.] She also alleges that Amazon broke into her locker at work several times to "possibly copy personal documents" and to gain access to her cell phone. [Filing No. 1 at 17.] Additionally, she claims that Amazon hacked into her personal computer and was deleting emails from her account (among other things), and that Amazon incorrectly recorded her tax withholding on her annual salary/wage report, which resulted in her receiving less money. [Filing No. 1 at 18-20.]

In February 2017, Ms. Parker "was subjected to constant harassment via statements made to [her] relating to her age and to her religious beliefs by former managers and other Amazon Associates, up to the last manager of Large Packing, John Nguyen, who stated that [she] was packing slow, maybe because [she] was feeling her age and was slowing down." [Filing No. 1 at 6.] Mr. Nguyen stated that "maybe if [Ms. Parker] would not track her units per day, per week that maybe [she] could make rate." [Filing No. 1 at 6.] He then instructed her to stop documenting her units packed per day, but Ms. Parker continued to do so. [Filing No. 1 at 7.] On May 31, 2017,

Mr. Nguyen approached Ms. Parker at her workstation and informed her that she was "receiving a documented written coach because [she] did not make rate the previous week…." [Filing No. 1 at 7.] Ms. Parker met with the Amazon Human Resources Manager, who "took the side of Amazon's directive," and Ms. Parker informed that individual that she would be filing a complaint with the Equal Employment Opportunity Commission ("EEOC"). [Filing No. 1 at 7.]

On June 2, 2017, Ms. Parker completed an Intake Questionnaire with the EEOC in which she checked boxes indicating that she believed she was being discriminated and retaliated against because of her race, sex, age, and religion. [Filing No. 1-1 at 2.] Where the form asked for more details about the alleged discrimination, Ms. Parker wrote:

- "I am a Christian and some of forced survey questions questioned whether I belong at Amazon";

- "retaliation and joining in on conspiracy because I do battle for my rights";

- "Attempted to give me a verbal warning reduced to computer submission – which I refused to sign";

- "Discrimination & illegal activities escalated in the last 60 days"; and

- "Manager stated I must comply with working other Departments – in the best interest of Amazon."

[Filing No. 1-1 at 2.] When the form asked what similarly situated individuals were treated better than Ms. Parker, she wrote: "I know of 4 individuals who complained for months about rate and manipulation – some left on their own – some fired – one took buy out after peak. 3 were older adults and all African Americans all new hires black, white, Asian are all treated better than me." Filing No. 1-1 at 2.] When the form asked what similarly situated individuals were treated worse than her, she wrote: "African American males of all ages treated worse. Employees over age 55 – all nationals treated worse." [Filing No. 1-1 at 3.] When the form asked what similarly situated individuals were treated the same, Ms. Parker wrote: "Lady by the name of Brenda…. She was

AA – very loud & verbal – complained for months – just as I have." [Filing No. 1-1 at 3.] When the form asked whether there were any witnesses to the alleged discriminatory incidents, Ms. Parker wrote, "In conversations with some associates – stated Amazon is attempting to fire numerous individuals to soon go automatic with packing machines then too face made rate often and now barely make rate – rather not give names – would possibly retaliate by Employer." [Filing No. 1-1 at 4.]

On August 24, 2017, Ms. Parker filed a Charge of Discrimination with the EEOC ("EEOC Charge"). [Filing No. 1-1 at 5-6.] She stated:

> I am an associate assigned to work in large packaging. I have been employed since February 2014. Respondent has engaged in illegal employment practices (manipulating production rates and forcing all employees to take a survey before they can log into the computer to do their work); forced me to cross train in other departments; and given me a verbal warning for not making production rate due to my race (black), sex (female), age (56), religion (Christian), and in retaliation for informing Human Resource officials I would file a charge with the EEOC.

> I allege retaliation at work and in private because I filed a complaint on Ops Manager in 2016 via phone. R has placed me in the back of packing stations several times a week.

> I believe R has falsified production rates by percentage and failing to prove non production rate. Other associates participate in the discrimination.

[Filing No. 1-1 at 5.] In response to what her discrimination claims were based on, Ms. Parker checked boxes for "race," "sex," "religion," and "retaliation." [Filing No. 1-1 at 5.]

Ms. Parker had not received any written warning, write up, or "time off task write up" until she received a write up on September 4, 2017 from Mr. Nguyen (who was instructed by Mr. Yoder to give her the write up) related to their May 31, 2017 meeting. [Filing No. 1 at 7.] Although it is not the normal practice for an employee to have to meet with Human Resources to receive a write up, Mr. Nguyen "deliberately attempted to intimidate [Ms. Parker] by requiring [her] to appear at HR…." [Filing No. 1 at 8.] Ms. Parker refused to electronically sign the write up and, when she

asked why she was receiving the write up, a Human Resources employee asked Ms. Parker to follow her to the women's restroom. [Filing No. 1 at 9.] Once inside the women's restroom, Ms. Parker pointed to the ceiling and asked the Human Resources employee, "What is that?" [Filing No. 1 at 9.] The Human Resources employee said "That is not a camera." [Filing No. 1 at 9.] Ms. Parker said "What is that then?," and the Human Resources employee stated "That is not a camera" and said she would send someone to Ms. Parker's workstation to tell her what it was. [Filing No. 1 at 9-10.] No one came to Ms. Parker's workstation to "offer explanation or cause for a camera being installed in the women's restroom…" [Filing No. 1 at 10.]

Ms. Parker was enrolled in IUPUI's "CIT Certificate Program" but, because she received a write up, she could not qualify for Amazon's Career Choice Program (which reimburses 90% of tuition) or its School Accommodations.[1] [Filing No. 1 at 8.]

At this time, Ms. Parker was leaving work at 3:00 p.m. on Tuesdays to attend class at 6:00 p.m. in downtown Indianapolis. [Filing No. 1 at 10.] She would then make up the missed hours on Thursdays. [Filing No. 1 at 10.] On September 6, 2017, Mr. Nguyen approached Ms. Parker and stated that she "was not making rate." [Filing No. 1 at 10.] She then "endured numerous questions, statements and accusations from other packing associates and managers, questioning [her] beliefs, why [she] did not appear to like certain music and why [she] did not belong to any of Amazon's numerous 'clicks.'" [Filing No. 1 at 10.]

Ms. Parker alleges that Amazon associates had to complete a Connection Survey Questionnaire "before each associate [could] begin their daily duties of packing." [Filing No. 1 at 11.] She alleges that 95% of the questions had "nothing to do with the duties of the associate or employment with Amazon," and that most of the questions "consisted of personal and private

---

[1] The Complaint does not explain what "School Accommodations" are.

informational questions that Amazon forced an answer from all associates before they could start their shift of work." [Filing No. 1 at 11.] Ms. Parker alleges that she asked other associates about the questions on their surveys, and that "there were times questions were especially created for [her] as a Christian, over 40 years old and black." [Filing No. 1 at 12.] She also alleges that the survey included numerous questions about a lawsuit she had initiated in federal court. [Filing No. 1 at 12.] Specifically, she alleges that the Connection Survey Questionnaire asked her: (1) "Do you not complain about issues relating to [your] job because [you] feared what will happen to [you]?"; (2) "Do[es] Plaintiff intend to learn about all subjects of law or just what Plaintiff is litigating at present?" (3) "Do you feel you belong here at Amazon as a minority Christian?" and (4) "What Superpowers do[es] Plaintiff have?" [Filing No. 1 at 12-13.]

In August 2017, Mr. Nguyen insisted that Ms. Parker be cross-trained in the AFE Department,[2] even though Ms. Parker did not want to receive that training. [Filing No. 1 at 13.] Ms. Parker was pulled from the Large Packing department usually in the midday, and sent to AFE for packing and then threatened with a write up for not making her rate. [Filing No. 1 at 13.] Mr. Nguyen, however, was "unable and unwilling to break down the procedures he followed in the Application utilized by Amazon to track rates (ADAPT) to show how [she] did not make rate." [Filing No. 1 at 14.] When Ms. Parker packed "swiftly and accurately" for a day, Mr. Nguyen would claim that the ADAPT program exhibited an error. [Filing No. 1 at 14.] Amazon, at Mr. Yoder's direction, then continued to implement new rules on the packing rates "in attempts to entrap [Ms. Parker] in her efforts to continue to make rate." [Filing No. 1 at 15.]

Ms. Parker claims that Amazon had a practice of "get[ting] rid of older associates to make room for younger associates," and "utilize[d] an employment agency, which caters to Asian

---

[2] The Complaint does not set forth what "AFE" stands for.

individuals to hire more Asians in packing Large and Small, packing in AFE, stowing and picking departments." [Filing No. 1 at 20-21.] She alleges that Amazon has targeted her because it "decided that [she] did not belong at Amazon and Amazon appear[ed] to be bothered by [her] age, religious preference and understanding of law." [Filing No. 1 at 21.] Ms. Parker began feeling unsafe at Amazon and "believed her mental, Spiritual and physical well-being was being jeopardized" by staying at Amazon. [Filing No. 1 at 9.] She applied for a leave of absence, but her request was denied because she "had an active written write up." [Filing No. 1 at 9.] Ms. Parker voluntarily left her employment at Amazon in September 2017 after completing Amazon's Career Choice Program and accepting a voluntary buyout. [Filing No. 1 at 10; Filing No. 1 at 18-19.]

Ms. Parker sets forth claims for: (1) national origin discrimination under Title VII; (2) religious discrimination under Title VII; (3) retaliation under Title VII; (4) violation of the Communications Act, 47 U.S.C. § 333; (5) violation of "S 1212 H.R. 2168 for willful and malice live tracking of mobile phone"; and (6) "unlawful filming in women's restroom." [Filing No. 1 at 21-31.] She seeks lost wages and benefits, compensatory damages, punitive damages, fees and expenses, and prejudgment interest. [Filing No. 1 at 31-32.]

### III.
### DISCUSSION

Amazon, Mr. Yoder, and Mr. Alperson move to dismiss all of Ms. Parker's claims. [Filing No. 51.][3] Ms. Parker has not timely responded to Defendants' motion, and her *pro se* status does

---

[3] The Court dismissed Ms. Parker's claims against Mr. Nguyen with prejudice in an Order entered contemporaneously with this Order. The Court also notes that although Ms. Parker names "Ops Manager (unable to remember name at this time)" as a defendant, she does not include any specific allegations against him or her other than to allege that he or she failed to investigate "a complaint [she] lodged around the time of peak 2015 or 2016." [Filing No. 1 at 2.] Ms. Parker does not mention the 2015/2016 complaint or lack of investigation again in her Complaint. The Court

not excuse her failure to respond. *See McMasters v. United States*, 260 F.3d 814, 818 (7th Cir. 2001). While the Court could grant Defendants' motion on that basis alone, Local Rule 7-1(c)(5) ("[t]he court may summarily rule on a motion if an opposing party does not file a response within the deadline"), it will consider the merits of Defendants' arguments.

### A. Federal Claims

#### 1. National Origin Discrimination Claim (Count I)

Ms. Parker sets forth a claim for national origin discrimination under Title VII. [Filing No. 1 at 21-23.] Defendants argue that Ms. Parker's national origin discrimination claim should be dismissed because she did not exhaust her administrative remedies since she failed to raise that claim in her EEOC Charge, and because she fails to state an adequate claim for relief in any event. [Filing No. 52 at 7-10.]

A plaintiff cannot challenge adverse employment actions in court under Title VII that she did not include in her EEOC charge, unless the events underlying those actions are reasonably related to the charges in the EEOC complaint. *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 602 (7th Cir. 2009); *see also Jones v. Res-Care, Inc.*, 613 F.3d 665, 670 (7th Cir. 2010) ("[G]enerally, Title VII claims that were not included in an EEO charge are barred"). In the context of employment discrimination specifically, the Seventh Circuit has held that a complaint may only include a claim not brought in an EEOC charge if the plaintiff shows that: (1) the claim in the complaint is "like or reasonably related" to the allegations in the EEOC charge; and (2) the claim in the complaint was expected to grow out of an EEOC investigation of the charge. *Delgado v.*

---

**DISMISSES** "Ops Manager" as a defendant because Ms. Parker has not set forth any cognizable claims against him or her.

*Merit Systems Protection Board*, 880 F.3d 913, 926 (7th Cir. 2018). To be reasonably related, the charge must describe the same conduct and implicate the same individuals. *Id.*

Despite there being a box to check for "National Origin" on the EEOC Charge form, Ms. Parker only checked the "race," "sex," "religion," and "retaliation" boxes in a section titled "DISCRIMINATION BASED ON." [Filing No. 1-1 at 5.] Moreover, it is not at all clear from the allegations in Ms. Parker's Complaint whether the types of discrimination Ms. Parker did include in her EEOC Charge are reasonably related to national origin discrimination. Specifically, her allegations do not indicate that a national origin discrimination claim would involve the same conduct or the same individuals as her race, sex, and religion discrimination claims and her retaliation claim. Ms. Parker's national origin discrimination claim fails because she did not exhaust her administrative remedies related to that claim.

Additionally, and in any event, Ms. Parker has failed to adequately allege a national origin discrimination claim. In connection with that claim, she alleges that she was subjected to a hostile work environment, was "stalk[ed] by spy camera being placed in women's restroom," was "harassed by other associates at the direction of Defendants Yoder and Alperson," and was "forced to leave because the environment was a detriment to [her] health and safety." [Filing No. 1 at 22.] But she does not link these allegations to her national origin and, indeed, does not even specify what her national origin is. She has not alleged enough facts which, if accepted as true, would "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Defendants' Amended Motion to Dismiss Ms. Parker's national origin discrimination claim is **GRANTED**.

### 2. *Religious Discrimination Claim (Count II)*

Ms. Parker alleges that Amazon has violated Title VII by discriminating against her based on her religion. She alleges that she is Christian, and that she was "subjected to adverse employment actions, including and not limited to hostile work environment, stalking by spy camera being placed in women's restroom… [and] harassed by other associates at the direction of Defendants Yoder and Alperson, while they attempted to get [her] to respond to illegal activities in a negative manner to cause [her] to be fired for verbal confrontation, threats, and insubordination." [Filing No. 1 at 24.] Defendants argue that Ms. Parker has not adequately alleged a religious discrimination claim because she did not suffer an adverse employment action since she left Amazon voluntarily, and because her allegations are conclusory.

To plausibly allege a religious discrimination claim, a plaintiff must allege, among other things, that her employer took an adverse employment action because of her religion. *See Khowaja v. Sessions*, 893 F.3d 1010, 1014-15 (7th Cir. 2018) (to succeed on religious discrimination claim on summary judgment, plaintiff must show: "(1) she is a member of a protected class; (2) her job performance met [her employer's] legitimate expectations; (3) she suffered an adverse employment action; and (4) another similarly situated individual who was not in the protected class was treated more favorably") (citation and quotation omitted); *Grossman v. S. Shore Pub. Sch. Dist.*, 507 F.3d 1097, 1098 (7th Cir. 2007) ("[t]he issue is whether the plaintiff's specific religious beliefs were a ground for" an adverse employment action). An employee can suffer an adverse employment action when she voluntarily resigns – as Ms. Parker did – "only if the resignation qualifies as a constructive discharge." *Norwood v. East Allen County Schools*, 2018 WL 4680008, *11 (N.D. Ind. 2018) (quotation and citation omitted).

Constructive discharge involves conditions that are "even more egregious than the high standard for hostile work environment claims, because, in the ordinary case, an employee is expected to remain employed while seeking redress." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 789 (7th Cir. 2007) (citation omitted). "A person is constructively discharged when she is not terminated from her employment, but quits because the working conditions are such that remaining in that employment is 'simply intolerable.'" *Tarpley v. City Colleges of Chicago*, --- Fed. App'x ----, 2018 WL 5255262, *8 (7th Cir. 2018) (quoting *McPherson v. City of Waukegan*, 379 F.3d 430, 440 (7th Cir. 2004)); *see also Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004) ("Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes").

The Court rejects Defendants' argument that Ms. Parker has not alleged that she suffered an adverse employment action merely because she resigned, because she can still have suffered an adverse employment action if her working conditions were so intolerable that she was forced to resign, or was constructively discharged. The Court finds, however, that she has not adequately alleged that she was constructively discharged. Specifically, Ms. Parker alleges that she "was unsafe at Amazon, which forced [her] to join the ranks of the unemployed," and that she was "forced to leave because the environment was a detriment to [her] health and safety," but also alleges that she accepted a buyout offer upon completing Amazon's Career Choice Program. Put simply, Ms. Parker does not set forth any further allegations regarding why her working conditions were so intolerable that she had to leave. *See Tarpley,* 2018 WL 5255262 at *9 (plaintiff failed to establish that she suffered from "intolerable working conditions that prompted her August 5 resignation such that it could be considered a constructive discharge"). Ms. Parker's allegations do not come close to rising to the level needed to allege that she was constructively discharged.

Moreover, even if Ms. Parker had adequately alleged that she suffered an adverse employment action, she has not plausibly alleged that Defendants took actions based on her religion. Ms. Parker alleges that Defendants took various actions against her – including interfering with the use of her computer and cell phone, placing cameras in the women's restroom, and manipulating her quota numbers – and alleges that she is a Christian, but significantly does not allege that Defendants took these actions based on her religion. [*See* Filing No. 1 at 23-25.]

Defendants' Amended Motion to Dismiss as it relates to Ms. Parker's religious discrimination claim is **GRANTED**.

### 3. *Retaliation Claim (Count III)*

Ms. Parker alleges that Amazon retaliated against her for meeting with Human Resources management and for contacting the EEOC to file a charge against Amazon. [Filing No. 1 at 25-26.] Defendants argue that Ms. Parker's retaliation claim fails as a matter of law because she voluntarily resigned, she has not alleged any facts to suggest she was treated unfairly or differently from any similarly situated employee who did not file an EEOC charge, and the three months between the filing of her EEOC Charge and her written warning is too long to support a retaliation claim. [Filing No. 52 at 22-23.]

To succeed on a retaliation claim, Ms. Parker must show on summary judgment that: "(1) she engaged in protected activity; (2) she suffered an adverse action; and (3) there was a causal connection between the two." *Wetzel v. Glen St. Andrew Living Community, LLC*, 901 F.3d 856, 868 (7th Cir. 2018). "A protected activity can include some step in opposition to a form of discrimination protected under the statute, and the employee needs only a good-faith and reasonable belief that the conduct she is opposing is unlawful." *Owens v. Old Wisconsin Sausage Co., Inc.*, 870 F.3d 662, 668 (7th Cir. 2017). An adverse action in the retaliation context is "one

which might well have dissuaded a reasonable worker from engaging in protected activity such as making or supporting a charge of discrimination." *Robinson v. Perales*, 894 F.3d 818, 830 (7th Cir. 2018).

Ms. Parker alleges that she suffered retaliation for meeting with Human Resources personnel and for filing an EEOC Charge. [Filing No. 1 at 25.] But she has not alleged how those two events led to her voluntary resignation from Amazon. Indeed, she does not specify which meeting with Human Resources she relies on to support her retaliation claim, nor how filing her EEOC Charge led to her decision to resign. Accordingly, her retaliation claim fails as a matter of law and Defendants' Amended Motion to Dismiss as to that claim is **GRANTED**.

### 4. *Federal Communication Act Claim (Count IV)*

Ms. Parker alleges that Defendants violated 47 U.S.C. § 333, part of the Federal Communications Act ("FCA"), by interfering with her use of the internet, blocking connections to her school to complete homework and research and check email, and interfering with the streaming of movies and news to her personal and school computers. [Filing No. 1 at 26-29.] Defendants argue that Ms. Parker's claim under 47 U.S.C. § 333 should be dismissed because there is no private right of action under that provision. [Filing No. 52 at 10-13.]

Section 333 of the FCA provides that "No person shall willfully or maliciously interfere with or cause interference to any radio communications of any station licensed or authorized by or under this chapter or operated by the United States Government." The Court agrees with Defendants that a private right of action has not been recognized under the FCA. *See Daly v. Columbia Broad. Sys., Inc.*, 309 F.2d 83 , 85 (7th Cir. 1962) ("There is no provision in Sec. 315(a), or in any other part of the Act, which gives a private individual a cause of action to recover damages for an alleged violation of the Act"); *Harrison-Halsted Community Group, Inc. v.*

*Housing and Home Finance Agency*, 310 F.2d 99, 104 (7th Cir. 1962) ("Very recently, we held the [FCA], which contains no provision for a judicial review, barred the bringing of a private cause of action to recover damages for a violation of that Act"); *Lechtner v. Brownyard*, 679 F.2d 322, 327 (3d Cir. 1982) ("There is no explicit grant of a private cause of action in the [FCA]"). Defendants' Amended Motion to Dismiss Ms. Parker's claim under the FCA, 47 U.S.C. § 333, is **GRANTED**.

     *5.   Claim for Violation of "S 1212 H.R. 2168" (Count V)*

Ms. Parker sets forth a claim for violation of "S 1212 H.R. 2168," in which she alleges that Defendants monitored activity on her mobile phone, prevented her from making calls on her mobile phone and "obtaining needed information," and caused a hostile work environment. [Filing No. 1 at 29-30.] Defendants argue that Ms. Parker is referring to Senate Bill 1212, the "Geolocational Privacy and Surveillance Act," which was a bill introduced in the United States Congress in 2011 to "amend title 18, United States Code, to specify the circumstances in which a person may acquire geolocation information and for other purposes." [Filing No. 52 at 15 (quoting https://www.govtrack.us/congress/bills/112/s1212/text).] Defendants note that Senate Bill 1212 was never enacted, so cannot form the basis for a claim.

Senate Bill 1212 was introduced on June 15, 2011 to the United States Congress, but was never enacted. See https://www.govtrack.us/congress/bills/112/s1212 ("This bill was introduced on June 15, 2011, in a previous session of Congress, but was not enacted"). Because it was not enacted into law, it cannot form a basis for a claim, and Defendants' Amended Motion to Dismiss as to Ms. Parker's claim for violation of "S 1212 H.R. 2168" is **GRANTED**.

###### 6. *Miscellaneous Federal Claims*

Ms. Parker vaguely references several additional federal claims in her Complaint but does not set them forth as separate Counts, so it is difficult to discern whether she intends to assert these claims. Defendants have addressed these potential claims, presumably out of an abundance of caution, and the Court will do the same.

###### a. Tax-Based Claims

Ms. Parker alleges in her Complaint that Amazon improperly withheld certain taxes "from [her] sale of stock in 2016" and "from [her] final pay check for completing Career Choice Certification in CIT at IUPUI." [Filing No. 1 at 4; Filing No. 1 at 19 ("Amazon illegally added Plaintiff's sale of stocks back into Plaintiff's earned wages but with less tax withholdings than Amazon actually deducted from the stocks and lesser proceeds eventually paid to Plaintiff"). Defendants argue that Ms. Parker does not have a private right of action "for an employer's alleged failure to withhold or pay Social Security, unemployment, and income taxes." [Filing No. 52 at 13-14.]

When an employer withholds taxes, it is immune from suit from an employee for improper withholding. 26 U.S.C. § 3403 ("The employer shall be liable for the payment of the tax required to be deducted and withheld under this chapter, and shall not be liable to any person for the amount of any such payment"); *see also Burda v. M. Ecker Co.*, 2 F.3d 769, 775 (7th Cir. 1993) ("when an entity…is acting as a private tax collector pursuant to federal tax laws, it is immune from suit"); *Edgar v. Inland Steel Co.*, 744 F.2d 1276, 1278 (7th Cir. 1984) ("Employees have no cause of action against employers to recover wages withheld and paid over to the government in satisfaction of federal income tax liability"). Defendants' Amended Motion to Dismiss Ms. Parker's potential tax-based claims is **GRANTED**.

b.  Privacy Protection Act Claim

Ms. Parker mentions in passing the Privacy Protection Act, 42 U.S.C. § 2000aa, et seq. (the

"PPA"), in her Complaint.[4]  [Filing No. 1 at 4.]  Defendants argue that the PPA relates to conduct

by governmental employees, not private entities or individuals, in connection with the

investigation or prosecution of criminal offenses.  [Filing No. 52 at 14-15.]  Because the PPA only

authorizes a private right of action against the United States or a state government, Defendants

argue, Ms. Parker's claim fails as a matter of law.  [Filing No. 52 at 15.]

The PPA provides a private right of action for individuals for damages for a search or

seizure of materials in violation of the PPA:

> (1) against the United States, against a State which has waived its sovereign
> immunity under the Constitution to a claim for damages resulting from a
> violation of this chapter, or against any other governmental unit, all of which
> shall be liable for violations of this chapter by their officers or employees while
> acting within the scope or under color of their office or employment; and
>
> (2) against an officer or employee of a State who has violated this chapter while
> acting within the scope or under color of his office or employment, if such State
> has not waived its sovereign immunity as provided in paragraph (1).

42 U.S.C. § 2000aa-6(a).  Because the PPA only provides a private right of action for individuals

against the United States, state governments, or officers or employees of a state, Ms. Parker's PPA

claim against Amazon – a private entity – and/or the individual Defendants fails as a matter of law.

To the extent Ms. Parker asserts a claim under the PPA, Defendants' Amended Motion to Dismiss

is **GRANTED**.

---

[4] Ms. Parker cites to 42 U.S.C. § 2000a of the PPA.  [Filing No. 1 at 4.]  Because 42 U.S.C. §
2000a is not part of the PPA, the Court assumes this is a typographical error and Ms. Parker meant
to cite to 42 U.S.C. § 2000aa.

### c. Title VII and ADEA Claims Against the Individual Defendants

In the "Introduction and Statement of Facts" section of her Complaint, Ms. Parker vaguely refers to claims of race discrimination under Title VII and age discrimination under the Age Discrimination in Employment Act ("ADEA"). [Filing No. 1 at 3-4.] To the extent Ms. Parker intends to allege Title VII and ADEA claims against the individual Defendants, those claims fail as a matter of law because there is no individual liability under either Title VII or the ADEA. *See Passananti v. Cook Cty.*, 689 F.3d 655 n.4 (7th Cir. 2012) ("Title VII authorizes suit only against the employer. Individual people who are agents of the employer cannot be sued as employers under Title VII") (emphasis omitted); *Horwitz v. Board of Educ. of Avoca School Dist. No. 37, 260 F.3d 602, 610 n.2 (7th Cir. 2001)* ("we have suggested that there is no individual liability under the ADEA"); *Showalter v. Richmond*, 2010 WL 746785, *2 (S.D. Ind. 2010) ("in this circuit, an individual is not a proper ADEA defendant"). Accordingly, any claims under Title VII and the ADEA against Mr. Yoder and Mr. Alperson are **DISMISSED**.

### d. Section 1981 Claims for Non-Race-Based Discrimination

Ms. Parker lists 42 U.S.C. § 1981e in the "Introduction and Statement of Facts" section of her Complaint, but does not specify what right she claims has been violated. [Filing No. 1 at 4.] Defendants argue that § 1981 only provides a cause of action for race discrimination, so any other types of discrimination are not actionable under § 1981. [Filing No. 52 at 17-18.]

The Court agrees that § 1981 only applies to race discrimination claims, and not claims of discrimination based on age, religion, or national origin. *See Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996) ("To establish a claim under § 1981, the plaintiffs must show that (1) they are members of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the

statute….").  So, to the extent Ms. Parker asserts claims under § 1981 for any type of discrimination other than race discrimination, those claims are **DISMISSED**.

### e.  Age Discrimination Claim Under the ADEA

Ms. Parker refers to the ADEA in the "Introduction and Statement of Facts" section of her Complaint, and alleges elsewhere in her Complaint that she asked whether other Amazon associates were asked survey questions or whether "there were times questions were especially created for plaintiff as a Christian, over 40 years old and black," and that Amazon "has an illegal practice to get rid of older associates to make room for younger associates to be hired to replace the ones illegally fired for forced to quit."  [Filing No. 1 at 4; Filing No. 1 at 12; Filing No. 1 at 20.]  Defendants argue that any ADEA claim would fail because Ms. Parker's allegations do not lead to a plausible inference that she suffered an adverse employment action.  [Filing No. 52 at 20-21.]

To recover under the ADEA, a plaintiff must "'prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action.'"  *Carson v. Lake County, Indiana*, 865 F.3d 526, 532 (7th Cir. 2017) (quoting *Gross v. FBL Financial Servs., Inc.*, 557 U.S. 167, 180 (2009); *Fleishman v. Continental Casualty Co.*, 698 F.3d 598, 603 (7th Cir. 2012)).  As with her religious discrimination claim, Ms. Parker's allegations do not plausibly allege that she suffered an adverse employment action.  Because she accepted a buyout and resigned from Amazon, Ms. Parker would need to allege that conditions at Amazon were so intolerable that she was constructively discharged.  As discussed above, she has not done this.  Moreover, Ms. Parker merely refers to her age as being over forty, but does not allege that any adverse employment actions she suffered were due to her age.  To the extent Ms. Parker asserts a discrimination claim under the ADEA, the Court **GRANTS** Defendants' Amended Motion to Dismiss that claim.

f.   Race Discrimination Claim

As with her age discrimination references, Ms. Parker mentions race discrimination in the "Introduction and Statement of Facts" section of her Complaint and mentions being African American elsewhere in her Complaint.  [Filing No. 1 at 4; Filing No. 1 at 22.]  Defendants argue that any race discrimination claim fails because Ms. Parker has not alleged that she suffered an adverse employment action, and because her allegations are conclusory and "in no way suffice to state a plausible claim for relief with respect to race…discrimination."  [Filing No. 52 at 24.]

As with her claims for religious and age discrimination, Ms. Parker must allege that she suffered an adverse employment action to succeed on a race discrimination claim.  *See Ferrill v. Oak Creek-Franklin Joint School District*, 860 F.3d 494, 500 (7th Cir. 2017) (to establish prima facie case of race discrimination on summary judgment, plaintiff must show that: "(1) [she] is a member of a protected class; (2) [she] performed [her] job to [her] employer's expectations; (3) [she] suffered an adverse employment action; and (4) one or more similarly situated individuals outside [her] protected class received better treatment").  As discussed above, Ms. Parker has not sufficiently alleged that she suffered an adverse employment action.  Further, while she mentions her race in passing in her Complaint, she does not allege that the acts which she complains of – being filmed by a "spy camera," being harassed be other associates, having her packing rate measured inaccurately, and being subjected to interference while using her computer and cell phone – had anything to do with her race.  Because she has not plausibly alleged a race discrimination claim, the Court **GRANTS** Defendants' Amended Motion to Dismiss that claim to the extent that Ms. Parker intends to assert it.

g. Wiretap Act Claim

In her "Introduction and Statement of Facts" section of her Complaint, Ms. Parker mentions the "Federal Electronic Communication Privacy Act, 18 U.S.C. Section 2510 et seq." (the "Wiretap Act"). [Filing No. 1 at 4.] She does not mention the Act again in her Complaint. Defendants argue that Ms. Parker has not adequately alleged a claim under the Wiretap Act.

Ms. Parker has not alleged a viable claim under the Wiretap Act. Merely stating that she brings her action under the Act, without any allegations regarding how Defendants violated the Act, is not sufficient. *See Iqbal*, 556 U.S. at 672 ("a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). To the extent Ms. Parker intended to allege a claim under the Wiretap Act, Defendants' Amended Motion to Dismiss that claim is **GRANTED**.

**B. State Law Claim**

*1. Claim for "Unlawful Filming in Women's Restroom" (Count VI)*

Ms. Parker titles her final claim "Unlawful Filming in Women's Restroom," and alleges that Amazon "has engaged in unlawful filming of females at Indy 1, by placing a spy camera inside the women's restroom located on the first floor, below Large Packing area," which has caused her to "continuously experience anxiety when entering any public restroom…." [Filing No. 1 at 30.] Defendants assume that Ms. Parker intends to assert an invasion of privacy claim, and argue that she has not provided allegations sufficient to support her claim. [Filing No. 52 at 27-28.]

The Court will also treat Ms. Parker's "unlawful filming" claim as a state law invasion of privacy claim. The Court ultimately has discretion whether to exercise supplemental jurisdiction

over a plaintiff's state claw claims. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009); *see* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim…if…the district court has dismissed all claims over which it has original jurisdiction…."). When deciding whether to exercise supplemental jurisdiction, "'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

The Seventh Circuit has made clear that "the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999); *see also Sharp Electronics Corp. v. Metropolitan Life Ins. Co.*, 578 F.3d 505, 514 (7th Cir. 2009) ("Normally, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits") (citation and quotation marks omitted). Exceptions to the general rule exist "(1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) [when] substantial judicial resources have already been committed, so that sending the case to another court will cause duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided." *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008) (quoting *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994) (internal quotation marks omitted)).

The relevant factors weigh in favor of the Court following the "usual practice" and relinquishing supplemental jurisdiction over Ms. Parker's invasion of privacy claim. *Groce*, 193 F.3d at 501. Both federal and state law toll the relevant limitations period when claims are pending in a civil action (except in limited circumstances not present here). *See* 28 U.S.C. § 1367(d); Ind.

Code § 34-11-8-1; *see also Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 266 (7th Cir. 1998).

Further, there is no indication that the Court or the parties have expended significant resources on this claim. Accordingly, the Court exercises its discretion to relinquish supplemental jurisdiction over Ms. Parker's "unlawful filming"/invasion of privacy claim, Defendants' Amended Motion to Dismiss as to that claim is **DENIED AS MOOT**, and that claim is **DISMISSED WITHOUT PREJUDICE**.[5]

## IV.
### CONCLUSION

For the foregoing reasons, the Court:

- **GRANTS** Defendants' Amended Motion to Dismiss as to Ms. Parker's federal claims, and **DISMISSES** those claims **WITH PREJUDICE**;[6] and

- **DENIES AS MOOT** Defendants' Amended Motion to Dismiss as to Ms. Parker's state law invasion of privacy claim and **DISMISSES** that claim **WITHOUT PREJUDICE**. [51].

Final judgment will enter accordingly.

---

[5] Additionally, to the extent Ms. Parker may have been seeking to assert a state law conversion claim against Amazon relating to its purported over withholding of taxes, the Court would decline to exercise supplemental jurisdiction over such a claim.

[6] Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), a plaintiff may amend its complaint once as a matter of course in response to a motion to dismiss. *Brown v. Bowman*, 2011 WL 1296274, *16 (N.D. Ind. 2011). The 2009 notes to that rule emphasize that this amendment "will force the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion. A responsive amendment may avoid the need to decide the motion or reduce the number of issues to be decided, and will expedite determination of issues that otherwise might be raised seriatim." Ms. Parker did not timely amend her Complaint in response to Defendants' Amended Motion to Dismiss. The Court is not required to give her another chance to plead her claims because she has already had an opportunity to cure deficiencies in her pleadings and, as discussed in the Court's Order entered contemporaneously herewith, failed to do so in a timely fashion. *See Emery v. American General Finance, Inc.*, 134 F.3d 1321, 1323 (7th Cir. 1998). Further, the Court is not convinced that Ms. Parker could, in fact, successfully amend her Complaint to cure the defects identified above, even if given the opportunity to do so. Accordingly, the Court, in its discretion, dismisses Ms. Parker's federal claims with prejudice. Her state law claim is dismissed without prejudice to bringing that claim in state court.

Date: 10/26/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

**Distribution via United States Mail to:**

Brenda Parker
P.O. Box 135
Valparaiso, IN 46384